## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EARIN AB,<br><br>    Plaintiff,<br><br>    v.<br><br>SKULLCANDY, INC.,<br><br>    Defendant. | Civil Action No.:<br><br><br>**TRIAL BY JURY DEMANDED** |

## COMPLAINT

Plaintiff Earin AB files this Complaint against Defendant Skullcandy, Inc. ("Skullcandy").

## NATURE OF THE CASE

1.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq.*, including 35 U.S.C. § 271, for infringement of United States Patent No. 9,402,120 (the "'120 Patent"). Attached as Exhibit A.

2.      Defendant Skullcandy has been and is making, using, selling, offering for sale, and/or importing wireless earbud products that practice the inventions claimed in the '120 Patent, including without limitation the Push 540 Open, Method 540 ANC, Dime 360, Smokin' Buds 360, and Push 540 Open, together with their color variants and substantially similar versions (collectively, the "Accused Products").

3.      The Accused Products include recently released Skullcandy earbuds that advertise multipoint pairing and automatic reconnection features that practice the claimed charger-detect, true-wireless-stereo reconnection, solo/mono operation, and host-device pairing functionality of the '120 Patent.

1

Earin seeks damages adequate to compensate it for Skullcandy's infringement of the '120 Patent, together with prejudgment and post-judgment interest, costs, and all other relief available under law.

**PARTIES**

4.      Backed by the Kickstarter community in 2014, Earin launched the original true wireless stereo ("TWS") M-1 earbuds on October 6, 2015. Earin has for years been known as an innovator of Bluetooth-enabled wireless earphone technologies.

5.      Earin is a Swedish corporation with a principal place of business at Dockgatan 27, 211 12 Malmö, Sweden.

6.      On information and belief, Skullcandy is a Delaware corporation with a principal place of business at 6301 N. Landmark Dr., Park City, Utah.

**JURISDICTION & VENUE**

7.      This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Skullcandy because Skullcandy is a Delaware corporation and therefore has a continuous presence in, and systematic contacts with, this District.

10.     On information and belief, Skullcandy has committed and continues to commit acts of infringement in this Judicial District, and the claims addressed in this Complaint arise out of and relate to such acts, including at least by making, using, offering for sale, selling, and/or importing the Accused Products in or into this District.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) because Skullcandy is incorporated in this District and Skullcandy's infringing activities have occurred and are occurring in this District.

## RELATED ACTION

12. Earin previously filed a related action against Skullcandy captioned *Earin AB v. Skullcandy, Inc.*, No. 24-cv-275-RGA (D. Del.). In that action, Earin accused a defined set of Skullcandy earbud products based on their multipoint-pairing-capable functionality.

13. This action is based on newly released Skullcandy products and later acts of infringement than those at issue in the prior case. This action includes newly released Skullcandy products that entered the market after the earlier case was framed.

## EARIN'S U.S. PATENT NO. 9,402,120

14. On July 26, 2016, the United States Patent and Trademark Office duly and legally issued United States Patent No. 9,402,120, entitled "Wireless Earbuds." A true and correct copy of the '120 Patent is attached as Exhibit A. The priority date of the '120 Patent is no later than September 5, 2014.

15. The '120 Patent is directed, inter alia, to a wireless earbud system in which the earbud housing includes a loudspeaker element, a rechargeable battery, and at least one main printed circuit board, such that when an earbud is disconnected from a charger it exits an idle mode, enters an operational mode, attempts to reconnect to another earbud for true wireless stereo

operation, falls back to mono operation if that connection is not achieved, and reconnects or initiates pairing procedures with a wireless audio streaming host device.

16. Earin is the owner, by assignment, of all right, title, and interest in and to the '120 Patent, including the right to sue for and recover damages for past, present, and future infringement.

17. The '120 Patent is valid and enforceable under the patent laws of the United States.

**COUNT I:**
**INFRINGEMENT OF THE '120 PATENT**

18. Earin incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

19. Skullcandy has made, used, offered for sale, sold, and/or imported the Accused Products that incorporate one or more of the inventions claimed in the '120 Patent within the United States.

20. Skullcandy has infringed and continues to infringe, either literally or under the doctrine of equivalents, one or more claims of the '120 Patent, including at least claim 20, in violation of 35 U.S.C. § 271 by making, using, selling, offering for sale, and/or importing the Accused Products, including without limitation the Push 540 Open, Method 540 ANC, Smokin' Buds, Push Active, and EcoBuds products.

21. Claim 20 of the '120 Patent provides

[Preamble] A wireless earbud having an idle mode and an operational mode, the wireless earbud comprising:

[A] an earbud housing;

[B] a loudspeaker element;

[C] a rechargeable battery; and

[D] at least one main printed circuit board having disposed thereon circuitry for wireless radio communication, audio codec and earbud operation control;

[E] wherein the circuitry is configured for automatic power preservation by: detecting connection of said battery to a charger and in response entering the idle mode, wherein existing connections to a second wireless earbud and to a wireless audio streaming host device will be disconnected; and

[F] detecting disconnection of said battery from said charger and in response entering the operational mode by: attempting a true wireless stereo, TWS, reconnection with the second wireless earbud;

[G] if the attempt is successful, operating the wireless earbud as a TWS audio receiver and otherwise operating the wireless earbud as a mono wireless audio receiver;

[H] if operated as a TWS audio receiver, determining whether the wireless earbud is a master device or a slave device with respect to the second wireless earbud;

[I] if the wireless earbud is determined to be a master device, attempting to reconnect with the wireless audio streaming host device and other known wireless audio streaming host devices if applicable; and

[J] if reconnection with the wireless audio streaming host device fails, initiate a pairing procedure with the wireless audio streaming host device and other known wireless audio streaming host devices if applicable.

22.    Based on publicly available information, Skullcandy product materials, Skullcandy support materials, and Earin's pre-suit investigation, the Accused Products meet all elements of at least claim 20 of the '120 Patent.

23.    Regarding the preamble, and to the extent it is limiting, the Accused Products are wireless earbuds having an idle mode and an operational mode. Each Accused Product is sold as a true wireless earbud product that includes earbuds and a charging case or charging pouch. Skullcandy identifies Push 720 Open as "Open-Ear True Wireless Earbuds," Push 540 Open as

5

"Open-Ear True Wireless Earbuds," Method 540 ANC as "True Wireless Earbuds," Smokin' Buds 360 as "True Wireless Earbuds," and Dime 360 as "True Wireless Earbuds."

24.     Limitations [A] through [D] require an earbud housing, a loudspeaker element, a rechargeable battery, and at least one main printed circuit board with circuitry for wireless radio communication, audio codec, and earbud operation control. The Accused Products satisfy these limitations. Skullcandy advertises drivers, Bluetooth connectivity, rechargeable power through a charging case or charging pouch, microphones, call/track/media controls, and app-based or earbud-based control functionality for the Accused Products. On information and belief, each Accused Product includes at least one main printed circuit board carrying the Bluetooth radio, codec, processor, and control circuitry needed to provide those features.

25.     For example, Skullcandy advertises Push 720 Open as including 12 mm drivers, Bluetooth 5.3 LE Audio, multipoint pairing, Auto On/Connect, call and track control, and a wireless charging pouch. Skullcandy advertises Push 540 Open as including 12 mm dynamic drivers, Bluetooth 5.3 LE Audio, multipoint pairing, Auto Connect, call/track/volume control, and a charging case. Skullcandy advertises Method 540 ANC as including Bose audio drivers, Bluetooth 5.3, multipoint pairing, call/track/media controls, Use Either Bud Solo, Auto On/Connect, and a charging case. Skullcandy advertises Smokin' Buds 360 as including Bluetooth, multipoint pairing, a microphone in each earbud, call/volume/media controls, Use Either Bud Solo, Auto On/Connect, and a charging case. Skullcandy advertises Dime 360 as including Bluetooth 5.3, multipoint pairing, call/track/volume control, Auto Connect, app compatibility, and a charging case.

26.     Limitation [E] requires circuitry configured for automatic power preservation by detecting connection of the battery to a charger and, in response, entering an idle mode, wherein

6

existing connections to a second wireless earbud and to a wireless audio streaming host device will be disconnected. The Accused Products satisfy this limitation. The Accused Products are designed to be placed in a charging case or charging pouch for charging and to power on, reconnect, or auto-connect when removed or activated for use. On information and belief, when the Accused Products are connected to their chargers, they enter an idle or power-preservation state and disconnect existing wireless links to the second earbud and host device until they are removed from the charger or otherwise reactivated.

27. Limitations [F] and [G] require detecting disconnection from the charger, entering operational mode, attempting TWS reconnection with the second earbud, and operating as a TWS receiver if successful or a mono receiver if not. The Accused Products satisfy these limitations. Skullcandy advertises or supports solo-earbud, auto-connect, and stereo true-wireless operation across the Accused Products. Method 540 ANC and Smokin' Buds 360 expressly advertise "Use Either Bud Solo," while Push 720 Open, Push 540 Open, and Dime 360 advertise true wireless operation, Auto On/Connect or Auto Connect, and multipoint or host reconnection functionality. These features reflect the claimed attempt to reconnect the earbuds for true wireless stereo operation and the fallback to mono operation when only one earbud is active or when the second-earbud connection is not established.

28. Limitations [H] and [I] require that, if the earbud is operating as a TWS audio receiver, it determines whether it is a master or slave device relative to the second earbud and, if it is the master device, attempts to reconnect with the wireless audio streaming host device and other known host devices if applicable. The Accused Products satisfy these limitations. On information and belief, when the Accused Products establish a TWS connection, one earbud acts as the primary or master earbud for host-device communication while the other earbud acts as a secondary or

7

slave earbud. This is reflected in the products' ability to transition between stereo and solo operation and to reconnect to previously paired host devices. Push 720 Open, Push 540 Open, Method 540 ANC, Smokin' Buds 360, and Dime 360 each advertise multipoint pairing or host-device reconnection functionality, including Auto On/Connect or Auto Connect functionality. Those features satisfy, at minimum, the requirement to reconnect with the host device and, where applicable, other known host devices.

29.     Limitation [J] requires that, if reconnection with the wireless audio streaming host device fails, the earbud initiate a pairing procedure with the wireless audio streaming host device and other known wireless audio streaming host devices, if applicable. The Accused Products satisfy this limitation because, when an earbud attempts to reconnect with a previously paired host device and that reconnection fails, the earbud initiates a pairing procedure to establish a wireless audio connection with an available host device. This functionality is reflected in Skullcandy's advertised Auto On/Connect, Auto Connect, Google Fast Pair, multipoint pairing, and Bluetooth pairing features for the Accused Products.

30.     Accordingly, Skullcandy has directly infringed and continues to directly infringe one or more claims of the '120 Patent, including at least representative claim 20, in violation of 35 U.S.C. § 271(a) by, without authority, making, using, offering for sale, selling, and/or importing the Accused Products in the United States.

31.     Skullcandy's infringing activities have been and continue to be without authority or license under the '120 Patent.

32.     On information and belief, Skullcandy's infringement of the '120 Patent has been and continues to be willful. At the latest, Skullcandy became aware of the '120 Patent and Earin's infringement allegations no later than the filing and service of *Earin AB v. Skullcandy*, Inc., No.

8

24-cv-275-RGA (D. Del.). Despite that knowledge, Skullcandy has continued its infringing conduct by making, using, offering for sale, selling, and importing infringing earbud products, and by releasing additional products that infringe claim 20 of the '120 Patent. On information and belief, Skullcandy has done so knowingly and deliberately, and in conscious disregard of Earin's patent rights, rendering this an exceptional case and entitling Earin to enhanced damages under 35 U.S.C. § 284.

33.    Earin has suffered and continues to suffer damages as a direct and proximate result of Skullcandy's infringement of the '120 Patent and is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

## JURY DEMAND

34.    Pursuant to Federal Rule of Civil Procedure 38(b), Earin AB demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Earin AB respectfully requests judgment against Skullcandy as follows:

A.    that this Court adjudge that Skullcandy infringes the '120 Patent;

B.    that this Court ascertain and award Earin AB damages under 35 U.S.C. § 284 sufficient to compensate for Skullcandy's infringement, including but not limited to infringement occurring before the filing of this lawsuit;

C.    that this Court award Earin prejudgment and post-judgment interest as allowed by law;

D.    that this Court award Earin its costs and such other and further relief as the Court deems just and proper.

9

Dated: May 13, 2026                              Respectfully submitted,

*Of Counsel:*                                    FARNAN LLP

Cristofer I. Leffler                             */s/ Michael J. Farnan*
**FOLIO LAW GROUP PLLC**                         Brian E. Farnan (Bar No. 4089)
1200 Westlake Ave. N., Suite 809                 Michael J. Farnan (Bar No. 5165)
Seattle, WA 98109                                919 N. Market St., 12th Floor
Tel: (206) 880-1802                              Wilmington, DE 19801
Email: cris.leffler@foliolaw.com                 (302) 777-0300
                                                 bfarnan@farnanlaw.com
                                                 mfarnan@farnanlaw.com

                                                 *Attorneys for Plaintiff Earin AB*

10